UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANICE JEFFERSON | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:05-CV-2262-P |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security,[1] | § | |
| | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on November 22, 2005, the subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

<u>Procedural History</u>: On January 14, 2004, Plaintiff filed an application for disability insurance benefits alleging disability due to problems with her left knee and wrist. (Administrative Record 72-74, 103 [Hereinafter Tr.].)

The Administrative Law Judge ("ALJ") conducted a hearing on May 19, 2005. (Tr. 370-414.) On July 16, 2005, the ALJ denied Plaintiff's request for disability insurance benefits finding that she retained the residual functional capacity ("RFC") to perform a significant range of sedentary work, including the jobs of interviewer, receptionist/information clerk, and office

---

[1] Effective February 12, 2007, Michael J. Astrue was named the Commissioner of Social Security. The caption is being changed pursuant to Fed. R. Civ. P. 25(d).

clerk. (Tr. 25-32.) Plaintiff timely requested a review of the ALJ's decision by the Appeals Council, and on September 16, 2005, the Appeals Council denied the request. (Tr. 4-6.) Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed her federal complaint on November 17, 2005. Defendant filed an answer on June 28, 2006. On August 11, 2006, Plaintiff filed a brief followed by Defendant's brief on November 28, 2006.

Standard of Review–Social Security Claims: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Id.* at 1022 (citations omitted). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971)).

Discussion:

To prevail on a claim for disability insurance benefits, a claimant bears the burden of

2

establishing that he or she is disabled, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505.  Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." § 404.1510.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* § 404.1520.  Under the first four steps, a claimant has the burden of proving that her disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove that there is other substantial gainful activity that the claimant can perform.  *See*, *e.g.*, *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

In this case, the ALJ proceeded to step five and determined that Plaintiff retained the capacity to perform the jobs of interviewer, receptionist,information clerk, and general office clerk.  (Tr.  25-32.)  He therefore denied Plaintiff's request for disability insurance benefits.  (Tr. 32.)

**Administrative Hearing Testimony**

Plaintiff testified on her own behalf at the administrative hearing held on May 19, 2005. (Tr.  374-96.)  Regarding her education and prior work experience, she stated that she obtained her GED and that she previously worked as a bus driver, home health aide, light rail operator and temporary worker.  (Tr.  374, 397-400.)  While employed as a school bus driver on March 27, 2003, while walking down a ramp to her bus, Plaintiff slipped and fell resulting in injuries to her

3

left knee and ankle and to her left hand/wrist. (Tr. 161.) Plaintiff is left-handed and has not been employed since the date of the accident. (Tr. 377-78, 386.) She suffers from high blood pressure as well as stress-induced anxiety, which results in chest pains, itching and shortness of breath. (Tr. 386-88.)

When asked to name the physical ailment that bothered her the most, Plaintiff referred to constant pain and swelling in her knees. (Tr. 378.) She noted that she underwent arthroscopic knee surgery in 2003, which failed to eliminate pain and swelling in her left knee. (Tr. 382.)

She noted that she experiences pain in her leg when standing or walking for more than 10 minutes or when sitting longer than one hour. (Tr. 379-80.) In an effort to control her pain and swelling, she takes Skelaxin, Lortab and Celebrex and has utilized a TENS unit along with heat therapy. (Tr. 380-82.) She testified that some of her medications make her sleepy. (Tr. 381.) She elevates her knee five to six times per day to control swelling. (Tr. 392.) At the time of the hearing, her doctor was evaluating whether she should undergo left knee replacement surgery and was optimistic that she would be able to resume a "normal life" after surgery. (Tr. 382-83.)

Regarding her hand and wrist impairments, Plaintiff testified that she had surgery on her left wrist which helped to decrease her pain, but did not eliminate it. (Tr. 385-86.) She stated that she is frequently unable to move her thumb for short periods of time. (Tr. 383.) More recently, she had carpal tunnel release surgery on her right wrist, but was not receiving follow-up treatment because the injury was not compensated under her worker's compensation program. (Tr. 390.)

Regarding her activities of daily living, she estimated that she has four or five "good days" in a week where she is able to get out of bed, dress herself, walk around and do errands.

(Tr. 394-95.) The other days of the week consist of "bad days" where she stays in bed all day because of swelling in her left leg. (Tr. 395-96.) Even on her "good days," she needs assistance fastening buttons on her clothing. (Tr. 395.) She does not attend her high school-aged daughter's extra-curricular activities because can't climb onto bleachers. (Tr. 393.)

Ms. Jefferson noted that she has not seen any of her doctors as frequently as needed due to various insurance problems. (Tr. 385.) She said that her doctors have told her that she is currently unable to work. (Tr. 391.) She contacted the Texas Rehabilitation Commission for job search assistance and was informed that she would have difficulty finding work unless she was retrained. (Tr. 391.)

Mollie Meloy testified as the vocational expert at the administrative hearing. (Tr. 396-414.) Regarding the exertional and educational requirements of Plaintiff's past relevant work as a bus driver, home health aide, light rail operator and cashier, she classified the bus driver and home health aide positions as medium exertion, semi-skilled; the light rail operator position as light exertion, semi-skilled; and the cashier position as light exertion, unskilled. (Tr. 400-01.) Ms. Meloy also responded to several questions posed by both the ALJ and Plaintiff's counsel where she was asked to consider the capabilities of a hypothetical individual with Plaintiff's age, educational level, and prior work experience. She opined that the hypothetical individual could perform sedentary, unskilled work even if she suffered from the following limitations: knee problems; wrist problems in both hands, particularly in the dominant left hand; was capable of using her dominant hand for frequent but not constant repetitive motions; was unable to crouch, kneel, crawl and climb; was unable to sit for more than six hours in an eight-hour workday; and was unable to lift more than 20 pounds occasionally and 10 pounds frequently. (Tr. 402.) The

VE identified the positions of interviewer, interview receptionist/information clerk, and general office clerk as positions that would be available to a person with such limitations. (Tr. 402-04.) Furthermore, the VE opined that the hypothetical individual would not be precluded from maintaining employment in the aforementioned positions if she could only occasionally use her left hand for repetitive motions, which she defined as using the hand one-third of the time. (Tr. 407-10.) However, the VE opined that the individual might have trouble retaining those jobs if she missed an average of five days of work each month or if she was unable to meet production quotas due to wrist pain or fatigue. (Tr. 404-06.) Ms. Meloy also stated that the number of jobs available to the hypothetical individual would diminish by 25% if she only had use of her non-dominant hand. (Tr. 411-12.)

**Dr. Molnar's Opinions**

Plaintiff relies extensively on the opinions expressed by Dr. Albert Molnar, M.D., to support her assertion that the ALJ erroneously denied her application for disability insurance benefits. Dr. Molnar examined Plaintiff and prepared a worksheet pertaining to her ability to function in the workplace on July 19, 2005, two days after the ALJ issued his unfavorable decision. (Tr. 16-21.) Plaintiff submitted Dr. Molnar's report and completed worksheet to the Appeals Council on August 26, 2005. (Tr. 7-21.) The Appeals Council made the evidence part of the final appellate record on September 16, 2005, but found no reason to review the ALJ's decision. (Tr. 4-5) ("In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed order of the Appeals Council. We found that this information does not provided a basis for changing the Administrative Law Judge's decision"). Because Dr. Molnar's opinions are part of the record on appeal, the

6

undersigned is obligated to consider and address this evidence. (Tr. 7); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337-338 (5th Cir. 2005).

Under the regulations, the medical opinion of an examining source is generally given more weight than the opinion of a nonexamining source. § 404.1527(d)(1). Where the examining source is a "treating source," any opinion regarding the nature and severity of a claimant's impairment should be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. § 404.1527(d)(2); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). However, the medical opinion of a treating source may be given less than controlling weight or rejected in its entirety for "good cause." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) The Fifth Circuit has defined "good cause" to include instances where the treating physician's opinion is brief and conclusory, where it is not supported by medically acceptable clinical and laboratory diagnostic techniques and where it is otherwise unsupported by the evidence. *Id.*

The undersigned finds that Dr. Molnar's opinions are entitled to no weight because they are conclusory and are unsupported by clinical findings. In his report, Dr. Molnar diagnosed Ms. Jefferson with de Quervain's tenosynovitis, a painful inflammation of the tendons in the wrist,[2] and noted that she suffered from back, feet, wrist and thumb pain as well as knee stiffness and edema in the lower extremities. (Tr. 16-17.) However, while he indicates that he physically examined Plaintiff, his report contains virtually no details regarding the nature and extent of the examination or a description of any diagnostic tests he performed. (Tr. 16-21.) Neither did he

---

[2] *See* MayoClinic.com, Arthritis: De Quervain's tenosynovitis, http://www.mayoclinic.com/health/de-quervains-tenosynovitis/DS00692 (last accessed Apr. 24, 2007).

7

attach documentation to his report that would shed light on the basis for his clinical findings. Likewise, although the worksheet he completed regarding Plaintiff's work-related limitations specifically requested that he support any conclusions with objective test results and medical findings, he did not include any supporting documentation. (Tr. 19-21.) Therefore, Plaintiff's request that her case be remanded to the Commissioner in light of Dr. Molnar's findings should be denied.

**Listing 1.02**

Plaintiff argues that the ALJ erred at step three of the sequential evaluation process because he failed to find that her knee and wrists impairments met Listing 1.02, entitled "Major dysfunction of a joint(s) (due to any cause)." Listing 1.02 defines dysfunction of a joint as:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
>
> B. Involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.
>
> 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.

The "inability to ambulate effectively" is characterized generally as "an extreme limitation of the ability to walk." § 1.00(B)(2)(b)(1). Examples of ineffective ambulation include: the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping or

8

banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  § 1.00(B)(2)(b)(2).

The "inability to perform fine and gross movements effectively" is defined as, "an extreme loss of function of both upper extremities."  § 1.00(B)(2)(c).  Examples of inability to perform fine and gross movements effectively include: the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place filed in a file cabinet at or above waist level.  § 1.00(B)(2)(c).

Regarding her left knee impairment, Plaintiff points out that she experiences pain while climbing stairs and that she is unable to perform many activities of daily living.  However, she does not cite any evidence suggesting that her treating physicians ever prescribed the use of a cane, crutch or walker or that she otherwise is unable to ambulate effectively, as that term is defined in the regulations.  Indeed, the medical evidence cited by the ALJ demonstrates that: in January 2004 Plaintiff reported that she was capable of walking for 20 minutes at a time, (Tr. 291), and in September 2004 she reported being able to walk half a mile, (Tr. 272).  At the administrative hearing, she testified that she experienced pain after approximately 10 minutes of walking. (Tr. 379-80.)   Therefore, based on the weight of the medical evidence in the record, the ALJ did not err in finding that Plaintiff's knee impairment failed to meet Listing 1.02.

Likewise, the ALJ did not err in finding that Plaintiff's wrist impairment failed to satisfy Listing 1.02.  While there is evidence in the record that Plaintiff experienced pain while performing certain movements with her left hand and wrist, such as putting on her shoes and lifting pots for cooking, Plaintiff reported significantly decreased pain levels in the months following her accident, (Tr. 151-52), and underwent successful left carpel tunnel release

9

surgery, (Tr. 134). Moreover, there is scant evidence in the record to suggest that Plaintiff was unable to effectively perform fine and gross movements with her right hand. Plaintiff thus failed to demonstrate that she the suffered an extreme loss of function of *both* upper extremities, as required under § 1.00(B)(2)(c).

**Plaintiff's Lifting Capacity**

Plaintiff posits several points of error related to the ALJ's RFC finding. A claimant's RFC is "the most [he or she] can still do despite [his or her] limitations. § 404.1545(a)(1). When an ALJ formulates a claimant's RFC, he must consider all of the claimant's exertional and non-exertional impairments, both those which he previously deemed severe, as well as those found to be non-severe. § 404.1545(b)-(e). The ALJ's determination must be based upon a review of all of the relevant medical and other evidence in the record. § 404.1545(a)(3). However, a claimant's description of her symptoms must by supported by objective medical signs or laboratory findings which could reasonably be expected to produce the alleged symptoms. *See generally* § 404.1529.

Plaintiff first argues that the ALJ erred when he determined that Plaintiff retained the capacity to occasionally lift 20 pounds because this finding is not supported by the medical evidence in the record. In his opinion, the ALJ noted that he did not "fully" accept the opinion of the state agency medical consultant, Dr. Frederick Cremona, M.D., who found that Plaintiff had the capacity to lift 10 pounds on an frequent and occasional basis. (Tr. 29, 124.) However, he did not cite any specific evidence in the record that supported his finding that Plaintiff was capable of occasionally lifting double this amount. (Tr. 29, 124.)

Assuming, *arguendo*, that the ALJ's finding regarding Ms. Jefferson's capability to lift

10

objects on an occasional basis is not supported by substantial evidence, the Plaintiff has not demonstrated that she was prejudiced by this finding.  Although the ALJ utilized this arguably unsupported finding when posing hypothetical questions to the VE, his questions also contained the criterion that the hypothetical individual could only perform *sedentary* work.  "Sedentary" is defined in the United States Department of Labor's Dictionary of Occupational Titles, Appendix C (4th Ed.  1991) ("DOT") as "[e]xerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body.  Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.  Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."  The VE, in turn,  identified three sedentary, unskilled jobs that Plaintiff was capable of performing: interviewer, interview receptionist/information clerk, and general office clerk [3]  (Tr. 402-404.)

The ALJ cited several pieces of evidence which support a finding that Plaintiff could perform sedentary work (i.e. lifting 10 pounds occasionally): (1) Plaintiff reported to Dr.  Craig Freyer, M.D., on September 3, 2003, that her wrist pain had improved 80-90% since the date of

---

[3]  Plaintiff argues that the jobs of interviewer and general office clerk require light, rather than sedentary, exertional capabilities.  While it is true that certain "interviewer" and "clerk" positions are classified as "light work" in the DOT, *see*, *e.g.*, DOT §§ 168.267-039 (eligibility-and-occupancy interviewer), 209.562-010 (office clerk), the VE specifically noted at the beginning of his testimony that he was identifying only "sedentary, unskilled" job positions and later described the duties of these selected positions. (Tr.  402, 405-10.)  In the DOT, the interviewer and clerk positions that closely match his descriptions are "employment interviewer" and "reception clerk", both of which are classified as sedentary positions.  *See* DOT §§ 166.267, 237.367-038.

11

her injury and, upon physical examination, she had 5/5 strength in the upper extremities, (Tr. 151-52); (2) Dr. Craig Graham, M.D., who examined Plaintiff on October 3, 2003, observed that she had 5/5 strength in her elbows, wrists, forearms and hands and diagnosed her with a left wrist sprain which would benefit from range of motion physical therapy, (Tr. 143, 145); and (3) Dr. Julio Flores, M.D., who evaluated Plaintiff's functional capacity in 2004, found that Plaintiff was capable of lifting 12 pounds from waist to shoulder, (Tr. 284.) Therefore, because the ALJ's ultimate conclusion that Plaintiff was capable of performing sedentary work is supported by substantial evidence and the ALJ identified sedentary jobs available in the economy, Plaintiff has failed to show that she was prejudiced by any error he may have committed by his finding that she was capable of occasionally lifting 20 pounds.

**Plaintiff's Ability to Repetitively Use Her Left Hand**

Additionally, the medical evidence cited in the preceding paragraph, along with the clinical findings of Plaintiff's wrist surgeon, Dr. Wilcox, M.D., who found that left carpal tunnel release surgery had successfully decompressed her medial nerves, (Tr. 134), refutes Plaintiff's assertion that the ALJ erred by finding that Plaintiff was capable of frequently but not constantly using here left hand for repetitive motions. While Dr. Molnar opined that Plaintiff was capable of using her left hand for fine and gross movements only one-third of the workday, the undersigned assigns no weight to his opinion. *Greenspan*, 38 F.3d at 237.

**Need for a Sit-Stand Option**

Plaintiff alleges that the ALJ's RFC finding contains an additional flaw because he did not include the limitation that Plaintiff be allowed to stand and walk throughout the workday to relieve stiffness from prolonged sitting. Plaintiff argues that the physical examination completed

by Dr. Charles Graham, M.D., on October 2, 2003, shows the need for a stand-walk option in her RFC. However, Plaintiff, rather than supporting her argument with citation to specific clinical findings, merely cites her own subjective complaints contained in Dr. Graham's examination notes (e.g. problems with sitting for long periods, difficulty initiating gait after sitting). A review of Dr. Graham's report reveals that, while he diagnosed Plaintiff with "worsening chondromalacia of the patella"[4] in the left knee, his sole treatment recommendation for her knee pain was that she continue taking anti-inflammatory medication. (Tr. 145.) He specifically ruled out the need for arthroscopic knee surgery. (Tr. 145.) Moreover, Plaintiff has not explained how the inclusion of a stand-walk option would have materially changed the ALJ's RFC finding or would have adversely affected her ability to perform and retain employment in the sedentary job positions identified by the VE, especially in light of the fact that the ALJ's hypothetical included a limitation that Plaintiff could only sit 6 out of 8 hours in the workday.

**Alternative Argument**

Alternatively, Plaintiff argues that even if the weight of the medical evidence demonstrates that she no longer suffered from a left wrist impairment after June 2004, the ALJ nevertheless should have considered a closed period of disability from her alleged onset date of March 27, 2003 to June 2004. However, as discussed throughout this opinion, Plaintiff has not satisfied her burden of establishing that her left knee and wrist impairments, either separately or in combination, met the criteria for disability set forth in § 404.1505(a) and 404.1509 at any point in time. Moreover, while the ALJ did not specifically address whether Plaintiff was entitled to a closed period of disability, he thoroughly discussed evidence in the record which indicated that

---

[4] Medline Plus, Medical Encyclopedia, Chondromalacia patella, http://www.nlm.nih.gov/medlineplus/ency/article/000452.htm (last accessed Apr. 24, 2007).

neither Plaintiff's left wrist or knee impairment, nor a combination of the two, were sufficiently severe so as to prevent her from engaging in substantial gainful activity for a period of at least twelve months.  (Tr.  25-32.)

**RECOMMENDATION:**

For the forgoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and DISMISSING this action with prejudice  A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 11th day of May, 2007.

_____

Wm. F. Sanderson Jr.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation.  Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996)(*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.